## Schmitz Trust (No. 2)

*Stanley M. Greenberg* and *Harry A. Rubin,* for petitioner, *Herman L. Sundheim,* contra.

*Frank W. Melvin,* guardian and trustee ad litem.

LEFEVER, J., February 13, 1957.—This case came before the court on petition of Harry J. Schmitz to review the adjudication of the hearing judge, dated June 24, 1954, and to terminate the trust and award the principal thereof to petitioner on the grounds, inter

alia, (a) that petitioner is a person of "inferior intelligence"; (b) that the execution of the trust agreement was procured through fraud and undue influence of petitioner's first cousin, Marie S. Bayer, and her husband, Joseph Bayer; and (c) that petitioner was not represented by counsel when he executed the trust instrument, nor at the audit of the account.

This case has been long drawn out and repeatedly before the court on a variety of pleadings.

On April 24, 1950, petitioner, Harry J. Schmitz, and his mother, Elizabeth Schmitz executed an agreement of trust, between themselves, as settlors, and Marie S. Bayer, as trustee. It directed and empowered the trustee, inter alia, as follows:

1. To convert the real estate located at 1959 69th Avenue, Philadelphia, into a two-family dwelling and to allow settlors to use the first floor during the term of their lives and the life of the survivor.

2. To pay the taxes, water rent, sewer rent, mortgage interest and mortgage principal as the same shall become due and payable.

3. To pay to either of settlors as the trustee may elect, or to the survivor of them:

(a) The net income, if any, from the trust.

(b) "So much of the principal, as TRUSTEE may, from time to time, in her sole and absolute discretion, deem advisable or necessary for their, her or his maintenance and support."

4. To pay to Harry J. Schmitz such an amount not in excess of the aggregate amount of $1,000 which within two years from the date of execution of the deed of trust he shall request.

5. To pay the expenses of the last illness and funeral of Elizabeth Schmitz to the extent that her estate is not sufficient therefor.

6. "From and after death of Elizabeth Schmitz and Harry J. Schmitz, whichever shall last occur, to pay

the principal, or balance thereof, and any accrued income thereon, unto Marie S. Bayer and Joseph L. Bayer and the survivor of them, and if neither are alive, then to their issue in equal shares, per stirpes."

The deed of trust designated Marie S. Bayer, as trustee. It provided further that in the event of her death, resignation or removal, her husband, Joseph L. Bayer, should serve as trustee, and in the event of his death, resignation or removal, Tradesmens National Bank and Trust Company, of Philadelphia, should be the successor trustee.

Elizabeth Schmitz died January 22, 1954. Thereupon Marie S. Bayer filed an account in this court, tendered her resignation as trustee and with the joinder of her husband requested the award of the corpus of the trust to Tradesmens Land Title Bank and Trust Company (successor by merger to Tradesmens National Bank and Trust Company) as successor trustee. Notice of the audit, in the form of a letter, dated May 17, 1954, was mailed to petitioner and to the other interested parties in the estate. This notice was full and complete as to all matters presented at the audit. It appears that petitioner was at that time represented by Henry Aaron Rubin, Esquire, that Mr. Rubin is still associated in this case as cocounsel for petitioner and that Mr. Rubin had notice of the audit. However, petitioner did not appear in person or by counsel at the audit.

On June 24, 1954, an adjudication was filed in which the account was confirmed nisi and the principal of the trust was awarded to Tradesmens Land Title Bank and Trust Company, successor trustee, for the purposes and uses of the trust. No exceptions were filed to the adjudication and it became final in due course. The schedule of distribution, filed pursuant to direction in the adjudication, was approved on September 24, 1954. No exceptions having been filed thereto,

the schedule became final in due course. Distribution has been made in accordance therewith.

On December 21, 1954, a petition was filed by Harry J. Schmitz to set aside and revoke the trust. There was also filed an application for appointment of a guardian ad litem to represent the minors and a trustee ad litem for unascertained interests. Frank W. Melvin, Esquire, was appointed guardian and trustee ad litem.

Preliminary objections were filed to the petition and petitioner filed "Answer to Preliminary Objections". The matter was then argued before the court en banc, and on February 21, 1955, the court, per Klein, P. J., entered a decree that " . . . the Preliminary Objections are sustained, pro forma, without prejudice to the rights of the petitioner to file a Petition for Review of the Adjudication by Lefever, J., dated June 24, 1954".

On February 25, 1955, petitioner filed a "Petition for Review of Adjudication". Preliminary objections were filed to this petition on May 10, 1955. Argument thereon was heard by the court en banc. On June 24, 1955, an opinion of the court, per Klein, P. J., was filed. Therein the court dismissed the preliminary objections, but granted leave to respondents to file an answer on the merits within 30 days from that date. Respondents filed such an answer in which they denied most of the averments of the petition.

By decree of this court, per Klein, P. J., dated October 7, 1955, ". . . the attached Petition for Review of Adjudication and the Answer filed thereto are referred to Lefever, J., for consideration and determination".

The hearing judge had several conferences with counsel in chambers and held hearings in court on March 7, 1956, and on January 14, 1957. Briefs have

been filed and oral argument presented. The matter is now ready for disposition.

Many adequate technical grounds to deny petitioner the relief he seeks are present in this case, viz:

1. The petition avers "no error in law, appearing in the body of the decree which confirmed the account of the executor [trustee], nor does it allege any new matter which has arisen or been discovered since the decree. Yet these are the grounds for a bill of review": Russell's Appeal, 34 Pa. 258, 261.

2. "The law provides a regular and orderly method for determining the rights of parties interested in the distribution of an estate by audit and adjudication, exceptions to adjudication and appeal, and a petition for review is only allowed in certain exceptional cases. The present is not one of them, but is an attempt to raise questions that should have been properly presented by exceptions to the adjudication after the time therefor has expired and after distribution has been made in accordance with the adjudication": Stocker's Estate, 25 Dist. R. 1013.

"The audit of a fiduciary's account is a formal legal proceeding, established under our system of jurisprudence as the time and place at which all beneficiaries and other interested parties must appear to voice any objections they may have to the fiduciary's management of the estate. Failure to appear and object at the audit operates as a conclusive bar to the raising at a later date all objections which could have been made at the audit. The adjudication of the Court places the imprimatur of the law upon the accountant's stewardship for the period covered by the accounting. . . . Having failed to act in defense of their rights at the time of the audit, they are therefore now barred by their laches from obtaining the review which they are belatedly seeking": Mershon Est., 364

Pa. 549 (affirming per curiam the opinion of Klein, J., 67 D. & C. 571).

3. The trust before the court is "spendthrift" in character; such trusts are vigorously protected in Pennsylvania, and will not be set aside *after the death* of one of the settlors (Elizabeth Schmitz) except upon the strongest proof and for most compelling reasons: Bowers' Trust Estate, 346 Pa. 85. Such reasons are not here present.

4. Petitioner has accepted the benefits of the trust (receipt of $1,000 from principal, receipt of net income, use of the 69th Avenue property) for almost five years; he cannot now attack the agreement of trust from which these benefits flowed.

5. The former trustee, Marie S. Bayer, and her husband have moved to Texas, and personal appearance in the present proceedings would be at great personal inconvenience and expense.

However, in view of the gravity of the charges made in the petition for review, which reflect upon the integrity of a member of the bar, and Marie S. Bayer, the former trustee, the hearing judge will not dismiss the petition on these technical grounds, as he could and ordinarily would do, but will consider the petition to terminate the trust on its merits.

Harry J. Schmitz was born March 27, 1898. He went to grammar school, completing the eighth grade. He is able to read and write.

Dr. Laurence P. Devlin, medical director at Frankford Arsenal, the physician called by petitioner, testified that "in my opinion Mr. Schmitz is mentally competent", that "he was a run of the mill man employed at the Arsenal", that "his level of intelligence is at about the level that you would find in a dishwasher", that "he has a rather low order of intelligence within the general scheme of people I come in contact with at the Frankford Arsenal. He falls more in the labor

class rather than in the skilled labor or executive class"; that there is no evidence of "any progressive mental disease or deterioration of his mental or physical condition"; that "he was sufficiently capable" of executing a trust agreement in April 1950; that he was "a person of about sixteen to eighteen" years of age with an I. Q. of "perhaps 90"; that "he is competent to the extent of the intelligence of a person who has completed his first year of high school", and that his present mental condition is no different from April 24, 1950, when he executed the agreement of trust.

Petitioner had a position as stock clerk for Concordia Silk Hosiery Mill from 1915 to 1948, with a salary during later years of about $40 per week. He has held a position as a helper in the kitchen connected with the cafeteria at the Frankford Arsenal since March 20, 1950. He presently receives "take-home pay", after all deductions, of $68.93 every two weeks. Apparently, he has faithfully performed the duties of these two positions.

Petitioner is crippled in one arm. He has had difficulty in his relations with the female sex owing to, or because of his feeling of, inferiority arising out of his crippled condition. Consequently, he has been a victim of a number of designing women. One such woman obtained $2,800 from him for the purpose of procuring a Florida divorce from her husband, but she failed to use the money for that purpose or to return it to petitioner. He was otherwise victimized. There was testimony that complaints were made to the police with regard to the kind of women he consorted with. In any event, it was a subject of concern to petitioner's mother, Elizabeth Schmitz, and to other members of the family.

At the request of petitioner's mother, Elizabeth Schmitz, and Marie Bayer (a first cousin who had

been reared in the Schmitz household and was considered a member thereof), Herman L. Sundheim, Esquire, drew the agreement of trust in question in an effort to protect petitioner and his mother, or the survivor, against these designing women and against other improvident acts by petitioner with respect to the small estate which had been accumulated by petitioner and his mother. It is not clear what proportion of the $9,350 purchase price of the property at 1959 69th Avenue was paid by the mother and petitioner, respectively. It is certain that $4,800, the net sales price received from the property formerly owned by the mother on Croskey Street, went into the purchase price of 1959 69th Avenue. Apparently, petitioner contributed some portion of the balance of the purchase price. In any event, when the property was purchased in 1927 title was taken in his name; apparently he recognized that he held title, in part or in toto, as a straw owner.

Mr. Sundheim made several drafts of the trust agreement. He had various conferences with petitioner, Marie S. Bayer, and Elizabeth Schmitz, separately and together, at which time he discussed the several successive drafts of the trust instrument and made numerous revisions. At last the final draft was completed. Mr. Sundheim read the entire agreement to petitioner and to Mrs. Schmitz in the presence of Charles Cowie, a stranger to the parties, who occupied part of Mr. Sundheim's suite of offices. He explained the trust agreement paragraph by paragraph to each of the parties. Both Mrs. Schmitz and petitioner appeared to understand the trust agreement thoroughly and expressed themselves fully satisfied with it. (Marie S. Bayer was not present in the inner office during this reading and explaining of the agreement.) Thereafter, the trust agreement was signed by petitioner, by Mrs. Schmitz, and then by Mrs. Bayer, who entered the inner office for this purpose. Contempo-

raneously, petitioner then executed a deed conveying the property at 1959 69th Avenue to Marie S. Bayer, as trustee, under the agreement of trust. The agreement of trust and the deed were executed in the presence of Mr. Cowie and Mr. Sundheim, who served as subscribing witnesses. At or about this time, both petitioner and Elizabeth Schmitz executed wills prepared for them at their request by Mr. Sundheim (the provisions thereof do not appear of record).

Subsequently, petitioner exercised his right under the trust agreement to request $1,000 and the trustee paid him that sum from the trust corpus. He and Mrs. Schmitz occupied the 69th Avenue property and received the entire net income from the trustee during Mrs. Schmitz' lifetime. Since her death petitioner has received and used all of the income.

Petitioner testified at length in support of his petition to set aside the trust. His testimony was evasive, conflicting, and at points difficult to understand. It is apparent to the hearing judge that petitioner is either (1) very stupid and of extremely low intellect (which is belied by the ability which he has manifested in his two positions for the past 41 years and the testimony of Dr. Devlin; or (2) he was an untruthful witness. Illustrations might be multiplied. A few will suffice. He never knew he was signing a deed of trust. He never saw the deed to the 69th Avenue property before the hearing, yet he admitted that the signature thereon was his. He testified that Mr. Sundheim never discussed the trust agreement with him, nor read it to him nor explained it, and "did not say anything to [him] at all", although he was in Mr. Sundheim's office for three-quarters of an hour during the conference when the trust agreement was executed. He had no idea whether he contributed "5¢, $500 or $5,000" to the purchase of the 69th Avenue property. He signed

everything that was handed to him in Mr. Sundheim's office without reading or understanding.

If petitioner is as incompetent mentally as he now urges, it would be a gross miscarriage of justice to terminate this trust (a) which is being administered by a capable corporate trustee; (b) from which petitioner is entitled to the net income for life, and (c) which contains broad power in the trustee to consume principal for his benefit, if the need arises. On the other hand, if petitioner has the mental capacity which Dr. Devlin found, his act in executing the agreement of trust was understanding, intentional and volitional, and cannot now be set aside. Petitioner is hopelessly impaled on the horns of this dilemma.

After hearing and careful study of the evidence, the hearing judge finds as facts: (1) That Mrs. Schmitz, the cosettlor, although aged and at times confused, understood the terms of the trust agreement when she executed it and the trust deed carried out her intention to provide protection both for petitioner and herself; (2) that the trust agreement was read and fully explained to petitioner at the time he executed it; (3) that Mrs. Bayer has at all times acted primarily for the benefit of petitioner and has not been motivated by desires of personal aggrandizement for herself, her husband or her issue; (4) that Herman L. Sundheim, Esquire, conducted himself with the care and propriety required of a lawyer under the canons of professional ethics and the customs and rules of this court in preparing the deed of trust and the deed to the 69th Avenue property, in supervising their execution, and in the administration of the trust estate; (5) that no fraud nor undue influence was exercised upon petitioner or Mrs. Schmitz in procuring execution of the trust agreement; (6) that it would not be for the benefit and advantage of petitioner, Harry J.

Schmitz, to terminate this trust; (7) that petitioner had notice of the audit of the account of Marie S. Bayer, trustee, on June 7, 1954, and that he at that time was represented by counsel who also had notice of the audit, and (8) that neither petitioner nor his counsel appeared at the audit.

In view of the foregoing facts, the hearing judge reaches the following conclusions of law:

1. No grounds have been shown for opening or reviewing his adjudication of June 24, 1954.

2. No proper grounds have been shown for the termination of the instant trust; per contra, the evidence adduced demonstrates conclusively the wisdom of the cosettlor, Elizabeth Schmitz, in creating the trust, and the advisability of its continuing for the protection and care of petitioner.

3. Marie S. Bayer, her husband, and her issue, and their remainder interests, which may be diminished in whole or in part by the corporate trustee's exercise on behalf of petitioner of its broad power of consumption of principal, are merely incidental to the main purposes of the trust.

Frank W. Melvin, Esquire, has served with fidelity and ability as guardian and trustee ad litem. Likewise, Herman L. Sundheim, Esquire, has been called upon to render professional services of an unusual nature for which he is entitled to compensation. Therefore, when this litigation is finally terminated, leave is granted to Messrs. Melvin and Sundheim to file petions with this court for allowance from the corpus of the trust of fees for services rendered.

Accordingly, this February 13, 1957, the petition to review the adjudication is dismissed.